1  RUTAN & TUCKER, LLP
   Thomas S. Salinger (State Bar No. 51952)
2  Matthew W. Grimshaw (State Bar No. 210424)
   Heather N. Herd (State Bar No. 217521)
3  611 Anton Boulevard, Fourteenth Floor
   Costa Mesa, California 92626-1931
4  Telephone:  714-641-5100
   Facsimile:  714-546-9035
5
   Attorneys for Plaintiff
6  Aurora Loan Services, LLC

7

8              UNITED STATES BANKRUPTCY COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11 | In re                              | Case No. 8:09-BK-17616-TA
   |                                    |
12 | ALBERT GENE PIZZO AND              | Chapter 11
   | JOAN ELNORA PIZZO,                 |
13 |_____|
   |                                    |
   | AURORA LOAN SERVICES, LLC., a      | Adversary No.
14 | Delaware Limited Liability Corporation, |
   |                                    |
15 |              Plaintiff,            |
   |                                    | **COMPLAINT FOR**
16 |       vs.                          |
   |                                    |   **1. EQUITABLE SUBROGATION**
17 | BRIAN G. JOHNSON as trustee of the |
   | Brian G. Johnson Defined Benefit Plan; |   **2. DECLARATORY RELIEF**
18 | BRIAN G. JOHNSON as trustee of the |
   | Brian G. Johnson Profit Sharing Plan & |   **3. OBJECTION TO CLAIM**
19 | Trust; VAL-CHRIS INVESTMENTS,      |
   | INC., a California Corporation; PMC |
20 | BANCORP, a California Corporation;  |
   | CITIBANK N.A., a national association, |
21 | as Indenture trustee of BSSLT 2007-1; |
   | ALBERT PIZZO, an individual; JOAN  |
22 | PIZZO, an individual.              |
   |                                    |
23 |              Defendants.           |

24

25     For its complaint ("Complaint"), plaintiff Aurora Loan Services, LLC alleges

26 as follows:

27              __JURISDICTION AND VENUE__

28     1.    On or about July 28, 2009, Albert Gene Pizzo and Joan Elnora Pizzo

Rutan & Tucker, LLP
attorneys at law

2259/016012-0057
1065802.01 a02/25/10                         -1-

1  ("Defendants Pizzo") filed a voluntary Chapter 11 bankruptcy petition in the United

2  States Bankruptcy Court for the Central District of California, Santa Ana Division,

3  thereby initiating Bankruptcy Case No. 09-17616-TA.

4      2.      This adversary proceeding constitutes an action that "arises in," "arises

5  under" or "relates to" the Defendants Pizzo's bankruptcy case.  Therefore, this Court

6  has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(a) and (b) and

7  28 U.S.C. § 157.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A),

8  (B), (K), and (O).

9      3.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

10                                    **PARTIES**

11     4.      Plaintiff Aurora Loan Services, LLC ("Plaintiff" or "Aurora") is, and at

12  all relevant times herein was, a limited liability corporation duly organized and

13  existing under the laws of the state of Delaware, with its principal place of business

14  located in the State of Colorado.

15     5.      Plaintiff is informed and believes and based thereon alleges that

16  defendant Brian G. Johnson ("Johnson") is an individual who is, and at all relevant

17  times herein was, a resident of the State of California, County of Orange.  Plaintiff is

18  informed and believes and based thereon alleges that Johnson is the trustee of the

19  Brian G. Johnson Defined Benefit Plan ("Johnson Benefit Plan") and a trustee of the

20  Brian G. Johnson Profit Sharing Plan & Trust ("Johnson Profit Sharing Plan").

21  Johnson is being sued in his capacity as trustee of the Johnson Benefit Plan and the

22  Johnson Profit Sharing Plan.

23     6.      Plaintiff is informed and believes and based thereon alleges that

24  defendant Val-Chris Investments, Inc. ("Val-Chris") is, and at all relevant times

25  herein was, a corporation duly organized and existing under the laws of the state of

26  California, with its principal place of business located in the State of California.

27     7.      Plaintiff is informed and believes and based thereon alleges that

28  defendant PMC Bancorp ("PMC Bancorp") is, and at all relevant times herein was,

Rutan & Tucker, LLP
*attorneys at law*

2259/016012-0057
1065802.01 a02/25/10                              -2-

1  a corporation duly organized and existing under the laws of the state of California,

2  with its principal place of business located in the State of California.

3      8.    Plaintiff is informed and believes and based thereon alleges that

4  defendant Citibank N.A. ("Citibank") is, and at all relevant times herein was, a

5  national association qualified to do business in, and doing business in the State of

6  California, County of Orange.  Citibank is being sued in its capacity as Indenture

7  trustee of BSSLT 2007-1.

8      9.    Plaintiff is informed and believes and based thereon alleges that

9  defendant Albert Pizzo ("Albert Pizzo") is an individual who is, and at all relevant

10 times herein was, a resident of the State of California, County of Orange.

11     10.    Plaintiff is informed and believes and based thereon alleges that

12 defendant Joan Pizzo ("Joan Pizzo") is an individual who is, and at all relevant

13 times herein was, a resident of the State of California, County of Orange.

14     11.    Defendants Johnson, Val-Chris, PMC Bancorp, Citibank, Albert Pizzo

15 and Joan Pizzo may be referred to collectively herein as "Defendants."

16 **GENERAL ALLEGATIONS**

17 **THE PROPERTY**

18     12.    Plaintiff is informed and believes and based thereon alleges that Albert

19 Pizzo and Joan Pizzo (collectively, the "Owners") hold title to real property located

20 at 119 and 119 ½ 28th Street, Newport Beach California 92663, (the "Real

21 Property"), situated within the County of Orange, and which Real Property is legally

22 described as:

23          Lot 26 in block 28 of Newport Beach, in the City of
        Newport Beach, County of Orange, State of California, as

24         per map recorded in Book 3, Page(s) 26, Miscellaneous
        Maps, in the Office of the County Recorder of said county.

25

26 **THE MYLOR DEED OF TRUST**

27     13.    Plaintiff is informed and believes and based thereon alleges that on or

28 about May 25, 2005 Mylor loaned Owners the principal sum of $850,000.00

1   pursuant to a promissory note payable to Plaintiff (the "Mylor Note").

2       14.    Plaintiff is informed and believes and based thereon alleges that the

3   Mylor Note is secured by a deed of trust conveying to Mylor (through its authorized

4   agent Mortgage Electronic Registration Systems, Inc. ("MERS")) a security interest

5   in the Real Property (the "Mylor DOT"). A true and correct copy of the Mylor DOT

6   is attached hereto as Exhibit A.

7       15.    Plaintiff is informed and believes and based thereon alleges that a

8   portion of the proceeds of the $850,000.00 loan from Mylor to Owners was used to

9   pay off Owners' obligation to Citimortgage in the amount of $317,573.43 on a prior

10   loan encumbering the Real Property.

11       16.    Plaintiff is informed and believes and based thereon alleges that the

12   Mylor DOT was recorded in the Official Records of the San Diego County

13   Recorder's Office on June 7, 2005 as Document No. 2005-0474666.

14       17.    Plaintiff is informed and believes and based thereon alleges that the

15   Mylor DOT was recorded in the Official Records of Orange County on June 22,

16   2009 as Document Number 2009000327623.

17       18.    Plaintiff is informed and believes and based thereon alleges that on or

18   about September 16, 2009, Mylor (through its nominee, MERS) executed an

19   Assignment of Deed of Trust, assigning and transferring all beneficial interest under

20   the Mylor DOT to Plaintiff (the "Aurora Assignment"). The Aurora Assignment

21   was recorded in the Official Records of Orange County on June 7, 2005 as

22   Instrument Number 2005-0474666. A true and correct copy of the Aurora

23   Assignment is attached hereto as Exhibit B.

## THE PMC DEED OF TRUST

25       19.    Plaintiff is informed and believes and based thereon alleges that on or

26   about September 28, 2006, Owners executed and delivered to defendant PMC

27   Bancorp a Home Equity Line of Credit Agreement with a credit limit of

28   $386,000.00, naming PMC Bancorp as lender (the "PMC Credit Agreement").

Rutan & Tucker, LLP
attorneys at law

1    20.    Plaintiff is informed and believes and based thereon alleges that the

2  PMC Credit Agreement is secured by a deed of trust conveying to PMC Bancorp

3  (through its authorized agent MERS) a security interest in the Real Property (the

4  "PMC DOT"). The PMC DOT was recorded in the Official Records of Orange

5  County on October 6, 2006 as Document Number 2006000667787. A true and

6  correct copy of the PMC Bancorp DOT is attached hereto as Exhibit C.

7    21.    Plaintiff is informed and believes and based thereon alleges that on or

8  about October 6, 2006, Ticor Title Insurance Company ("Ticor") issued Policy of

9  Title Insurance, Policy No. 546658-M (the "PMC Policy") to PMC Bancorp,

10  insuring the PMC DOT. A true and correct copy of the PMC Policy is attached

11  hereto as Exhibit D.

12    22.    Part I of Schedule B of the PMC Policy states that "This policy does

13  not insure against loss or damage (and [Ticor] will not pay costs, attorneys' fees, or

14  expenses) which arise by reason of...A deed of trust to secure the indebtedness in the

15  amount shown below, and any other obligations secured thereby..." followed by a

16  detailed description of the Mylor DOT.

17    23.    Plaintiff is informed and believes and based thereon alleges that on or

18  about October 28, 2009, MERS, solely as nominee for PMC Bancorp, executed an

19  Assignment of Deed of Trust, assigning and transferring all beneficial interest under

20  the PMC DOT to Citibank N.A., as Indenture trustee of BSSLT 2007-1 (the

21  "Citibank Assignment"). The Citibank Assignment was recorded in the Official

22  Records of Orange County on November 20, 2009 as Document Number

23  2009000629976. A true and correct copy of the Citibank Assignment is attached

24  hereto as Exhibit E.

25  **THE VAL-CHRIS DEED OF TRUST**

26    24.    Plaintiff is informed and believes and based thereon alleges that on or

27  about November 14, 2008, Owners executed and delivered to defendant Val-Chris a

28  promissory note payable to Val-Chris, as lender, in the principal sum of $260,000.00

1 │ (the "Val-Chris Note").

2 │     25.    Plaintiff is informed and believes and based thereon alleges that the

3 │ Val-Chris Note is secured by a deed of trust conveying to Val-Chris a security

4 │ interest in the Real Property (the "Val-Chris DOT"). The Val-Chris DOT was

5 │ recorded in the Official Records of Orange County on November 21, 2008 as

6 │ Document Number 2008000545657. A true and correct copy of the Val-Chris DOT

7 │ is attached hereto as Exhibit F.

8 │     26.    Plaintiff is informed and believes and based thereon alleges that on or

9 │ about November 19, 2008, Val-Chris executed an Assignment of Deed of Trust

10 │ granting, assigning and transferring all beneficial interest under the Val-Chris DOT

11 │ to the Brian Johnson Benefit Plan (as to a 50% undivided interest) and the Brian

12 │ Johnson Profit Sharing Plan (as to a 50% undivided interest), as tenants in common

13 │ (the "Johnson Assignment"). The Johnson Assignment was recorded in the Official

14 │ Records of Orange County on November 21, 2008 as Document Number

15 │ 2008000545658. A true and correct copy of the Johnson Assignment is attached

16 │ hereto as Exhibit G.

17 │     27.    Plaintiff is informed and believes and based thereon alleges that on or

18 │ about November 21, 2008, Ticor Title Insurance Company ("Ticor") issued Loan

19 │ Policy of Title Insurance, Policy No. 908627-M (the "Johnson Policy") to the Brian

20 │ Johnson Benefit Plan and the Brian Johnson Profit Sharing Plan, insuring the Val-

21 │ Chris DOT and Johnson Assignment. A true and correct copy of the Johnson Policy

22 │ is attached hereto as Exhibit H.

23 │     28.    Part I of Schedule B of the Johnson Policy states that "Except as

24 │ provided in Schedule B- Part II, this policy does not insure against loss or damage,

25 │ and [Ticor] will not pay costs, attorneys' fees, or expenses that arise by reason of...A

26 │ deed of trust to secure the indebtedness in the amount shown below, and any other

27 │ obligations secured thereby..." followed by a detailed description of the Mylor DOT.

28 │     29.    Plaintiff is informed and believes and based thereon alleges that on or

1    about December 17, 2009, the Brian Johnson Benefit Plan and the Brian Johnson

2    Profit Sharing Plan, as beneficiaries under the Val-Chris DOT, executed a

3    substitution of trustee, thereby substituting themselves as trustees under the Val-

4    Chris DOT (the "Johnson Substitution"). The Johnson Substitution was recorded in

5    the Official Records of Orange County on December 29, 2009 as Document

6    Number 2009000694662. A true and correct copy of the Johnson Substitution is

7    attached hereto as Exhibit I.

8    **FIRST CLAIM FOR RELIEF**

9    **(For Equitable Subrogation against all Defendants )**

10        30.    Plaintiff realleges and incorporates herein by this reference each and

11    every allegation of paragraphs 1 through 29 of this complaint as though set forth in

12    full.

13        31.    $317,573.43 was paid to Citimortgage from the proceeds of Plaintiff's

14    $850,000 loan to Owners. As a result of this payment, the encumbrance placed on

15    the Real Property by Owners' obligation to Citimortgage was removed from the

16    Real Property.

17        32.    The $317,573.43 payment from the loan proceeds to Citimortgage was

18    made to protect Plaintiff's interest in and title to the Real Property.

19        33.    Plaintiff has the right under the doctrine of equitable subrogation to be

20    subrogated to the encumbrance placed on the Real Property by Owners' obligation

21    to Citimortgage that was paid with the proceeds of the loan from Plaintiff to

22    Owners, resulting in the removal of the Citimortage encumbrance from the Real

23    Property.

24        34.    As a consequence of such equitable subrogation, title to the Real

25    Property should confirm that the Mylor DOT stands in the most senior position on

26    the title to the Property, including but not limited to being senior to both the PMC

27    DOT and the Val-Chris DOT.

28    / / /

## SECOND CLAIM FOR RELIEF

### (For Declaratory Relief against all Defendants)

35.    Plaintiff realleges and incorporates herein by this reference each and every allegation of paragraphs 1 through 34 of this complaint as though set forth in full.

36.    Plaintiff contends that:

a.    The Mylor Note is secured by the Mylor DOT, which was recorded in the official records of San Diego County on June 7, 2005;

b.    The Mylor DOT was recorded in the official records of Orange County on June 22, 2009;

c.    The PMC DOT was recorded in the official records of Orange County on October 6, 2006;

d.    PMC Bancorp had actual knowledge of the Mylor DOT at the time of recording of the PMC DOT;

e.    PMC Bancorp is not a bona fide encumbrancer of the Real Property vis-à-vis the Mylor DOT;

f.    The Mylor DOT holds a senior position to the PMC DOT on the title of the Real Property;

g.    The Citibank Assignment was recorded in the Official Records of Orange County on November 20, 2009;

h.    Citibank had actual and constructive knowledge of the Mylor DOT at the time of recording of the Citibank Assignment;

i.    Citibank is not a bona fide encumbrancer of the Real Property vis-à-vis the Mylor DOT;

j.    The Mylor DOT holds a senior position to the PMC DOT on the title of the Real Property;

k.    The Val-Chris DOT was recorded in the Official Records of Orange County on November 21, 2008;

1          l.      Val-Chris had actual knowledge of the Mylor DOT at the time of

2    recording of the Val-Chris DOT;

3          m.     Val-Chris is not a bona fide encumbrancer of the real property

4    vis-à-vis the Mylor DOT;

5          n.      Johnson had actual knowledge of the Mylor DOT at the time of

6    recording of the Val-Chris DOT;

7          o.      The Johnson Assignment was recorded in the Official Records of

8    Orange County on December 29, 2009;

9          p.      Johnson had actual and constructive knowledge of the Mylor

10   DOT at the time of recording the Johnson Assignment;

11         q.      Johnson is not a bona fide encumbrancer of the Real Property

12   vis-à-vis the Mylor DOT;

13         r.      The Mylor DOT holds a senior position to the Val-Chris DOT on

14   the title of the Real Property;

15         s.      Any foreclosure of any beneficial interest in the PMC DOT or

16   the Johnson DOT must be subject to Plaintiff's senior interest under the

17   Mylor DOT.

18   37.    Actual judicial controversies exist between Plaintiff and Defendants

19   regarding their rights and obligations toward each other with respect to the Mylor

20   DOT, the PMC DOT and the Val-Chris DOT.  As a result of these disputes, Plaintiff

21   desires a judicial determination of each party's rights and duties vis-à-vis the Mylor

22   DOT, the PMC DOT and the Val-Chris DOT, including, more specifically, a

23   judicial declaration with regard to the issues set forth in paragraph 36, above.

24   38.    A judicial declaration is necessary at this time so that Plaintiff may

25   ascertain its rights and duties in order to avoid a multiplicity of actions.

26                    **THIRD CLAIM FOR RELIEF**

27            **(For Objection to Claim against all Defendants)**

28   39.    Plaintiff realleges and incorporates herein by this reference each and

1  every allegation of paragraphs 1 through 38 of this complaint as though set forth in

2  full.

3     40.   Because of Plaintiff's rights under state law, the Mylor DOT is senior

4  in priority to the PMC DOT and the Val-Chris DOT.

5     41.   Pursuant to 11 U.S.C. § 502, Plaintiff objects to Defendants' claims

6  against Owners and/or property of the Owners' bankruptcy estate to the extent that

7  Defendants assert that the PMC DOT or the lien against the Real Property created

8  by the PMC DOT is senior in priority to the Mylor DOT or the lien against the Real

9  Property created by the Mylor DOT.

10     42.   Pursuant to 11 U.S.C. § 502, Plaintiff objects to Defendants' claims

11  against Owners and/or property of the Owners' bankruptcy estate to the extent that

12  Defendants assert that the Val-Chris DOT or the lien against the Real Property

13  created by the Val-Chris DOT is senior in priority to the Mylor DOT or the lien

14  against the Real Property created by the Mylor DOT.

15  **PRAYER**

16     WHEREFORE, Plaintiff prays for judgment as follows:

17     1.   For a judicial declaration that Plaintiff is equitably subrogated to the

18  position of the encumbrance previously placed on the Real Property by the

19  Citimortgage loan and stands in the position senior to both the PMC DOT and the

20  Val-Chris DOT on the title to the Real Property;

21     2.   For a judicial declaration with regard to the issues set forth in

22  paragraph 36 of this Complaint;

23     3.   For judgment disallowing Defendants' claims to the extent that they

24  assert a claim or lien against the Real Property that is senior in priority to Plaintiff's

25  lien against the Real Property;

26  / / /

27  / / /

28  / / /

Rutan & Tucker, LLP
attorneys at law

1    4.    For costs of suit and attorneys fees as allowed by law;

2    5.    For such other and further relief as the court deems just and proper.

3

4    Dated: February 25, 2010                    RUTAN & TUCKER, LLP

5

6    By:    /s/ Matthew W. Grimshaw
            Matthew W. Grimshaw

7            Attorneys for Plaintiff, Aurora
            Loan Services, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Rutan & Tucker, LLP
attorneys at law

2259/016012-0057
1065802.01 a02/25/10                              -11-

# EXHIBIT A

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||||||    69.00

2009000327623 03:55pm 06/22/09
108 73 D11 21
0.00 0.00 0.00 0.00 0.00 60.00 0.00 0.00 0.00

SERVICELINK, IRVINE

When recorded mail to:
Mylor Financial Group, Inc., a
California Corporation
15451 San Fernando Mission Blvd. #200
Mission Hills, CA 91345

## DEED OF TRUST

T.S. # CA-09-291309-CL
ORDER # 123612

# DO NOT REMOVE

## This is part of the official document:

TO RECORD IN CORRECT COUNTY

# EXHIBIT A



DOC #    2005-0474666

JUN 07, 2005    8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:      63.00
PAGES:     19        DA:    1



RECORDING REQUESTED BY
TICOR TITLE
ORANGE BRANCH

F11
19P

2705

Recording Requested By:
MYLOR FINANCIAL GROUP, INC.

Return To:
MYLOR FINANCIAL GROUP, INC., A CALIFORNIA
CORPORATION
15451 SAN FERNANDO MISSION BLVD. #200
MISSION HILLS, CA 91345

Prepared By:
MYLOR FINANCIAL GROUP, INC.
15451 SAN FERNANDO MISSION BLVD. #200
MISSION HILLS, CA 91345
(818) 365-6009

868 222-12

———————[Space Above This Line For Recording Data]———————

# DEED OF TRUST

LOAN NO.:   61000589
ESCROW NO.:  2049659DD

MIN  100247000510005896
MERS Phone: 1-888-679-6377

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated        MAY 25, 2005
together with all Riders to this document.

(B) "Borrower" is
ALBERT PIZZO AND JOAN PIZZO, HUSBAND AND WIFE AS JOINT TENANTS

Borrower's address is 2227 FRANCISCO DRIVE, NEWPORT BEACH, CA 92660
Borrower is the trustor under this Security Instrument.

(C) "Lender" is
MYLOR FINANCIAL GROUP, INC., A CALIFORNIA CORPORATION

Lender is a  CORPORATION
organized and existing under the laws of  CALIFORNIA

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3005  1/01

VMP-6A(CA) (0207)                 Page 1 of 15        LENDER SUPPORT SYSTEMS, INC MERS6ACA.NEW (08/03)

2706

Lender's address is
15451 SAN FERNANDO MISSION BLVD. #200, MISSION HILLS, CA  91345

(D) "Trustee" is
MYLOR FINANCIAL GROUP, INC.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated        MAY 25, 2005
The Note states that Borrower owes Lender

EIGHT HUNDRED FIFTY THOUSAND AND NO/100 X X X X X X X X X X X X X X X X X X X X X    Dollars
(U.S. $ 850,000.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    JUNE 01, 2035

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "RIDERS" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☒ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ Other(s) [specify] | | |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

VMP-6A(CA) (0207)                    Page 2 of 15                    Form 3005  1/01

**2707**

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| COUNTY | of | ORANGE | : |
|---|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

LOT 26 IN BLOCK 20 OF NEWPORT BEACH, IN THE CITY OF NEWPORT BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 3, PAGE(S) 26, MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Parcel ID Number: 047 091 24                        which currently has the address of
                        119 & 119 1/2 28TH STREET                        [Street]
            NEWPORT BEACH            [City], California    92663    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

VMP-6A(CA) (0207)                    Page 3 of 16                    Form 3005 1/01

Order: Non-Order Search  Doc: OR:2009 00327623                    Public Record                    Created By: motaylor  Printed: 1/22/2010 3:38:26 PM PST

**2708**

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

**2709**

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

—

**2710**

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

VMP-6A(CA) (0207)                          Page 6 of 16                          Form 3005 1/01

2711

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

VMP-6A(CA) (0207)                    Page 7 of 16                    Form 3005 1/01

**2712**

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

VMP-6A(CA) (0207)                    Page 8 of 16                    Form 3005 1/01

**2713**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

**2714**

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**2715**

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

VMP-6A(CA) (0207)                           Page 11 of 15                           Form 3005 1/01

Order: Non-Order Search  Doc: OR:2009 00327623                Created By: motaylor  Printed: 1/22/2010 3:38:27 PM PST

2716

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

VMP-6A(CA) (0207)                    Page 12 of 15                    Form 3005   1/01

2717

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

VMP-6A(CA) (0207)                    Page 13 of 15                    Form 3005   1/01

**2718**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any RIDER executed by Borrower and recorded with it.

Witnesses:

_____
-Witness

_____
-Witness

_____ (Seal)          _____ (Seal)
ALBERT PIZZO          -Borrower          JOAN PIZZO          -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                 -Borrower

VMP-6A(CA) (0207)                Page 14 of 15                Form 3005  1/01

2719

State of  CALIFORNIA
County of  Orange
} ss.

On  6-1-05                    before me,  Peggy Hartley                    personally appeared

ALBERT PIZZO AND JOAN PIZZO

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

PEGGY HARTLEY
COMM. #1394560
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Comm. Exp. Jan. 18, 2007

VMP-6A(CA) (0207)                    Page 15 of 15                    Form 3005  1/01

2720

# 1-4 FAMILY RIDER
### (Assignment of Rents)

LOAN NO.:  51000589

MIN: 100247000510005896
MERS Phone: 1-888-679-6377

THIS 1-4 FAMILY RIDER is made this    25th    day of    MAY, 2005    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to

MYLOR FINANCIAL GROUP, INC., A CALIFORNIA CORPORATION

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at:

119 & 119 1/2 28TH STREET, NEWPORT BEACH, CA  92663
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to
the Property described in the Security Instrument, the following items now or hereafter
attached to the Property to the extent they are fixtures are added to the Property description,
and shall also constitute the Property covered by the Security Instrument: building materials,
appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or
intended to be used in connection with the Property, including, but not limited to, those for
the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light,
fire prevention and extinguishing apparatus, security and access control apparatus, plumbing,
bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers,
disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades,
curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain
a part of the Property covered by the Security Instrument. All of the foregoing together with
the Property described in the Security Instrument (or the leasehold estate if the Security
Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security
Instrument as the "Property."

Form 3170 1/01

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
V-57R (0411)                           Page 1 of 4            LENDER SUPPORT SYSTEMS INC. 57R-NEW (03/06)

2721

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

V-57R (0411)                    Page 2 of 4                    Form 3170 1/01

2722

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. CROSS-DEFAULT PROVISION. Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

V-57R (0411)                    Page 3 of 4                    Form 3170 1/01

2723

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)
ALBERT PIZZO                    -Borrower

_____ (Seal)
JOAN PIZZO                      -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

V-57R (0411)                    Page 4 of 4                    Form 3170 1/01



This is a true certified copy of the record
if it bears the seal, imprinted in purple ink

DAVID BUTLER
Assessor/Recorder/Clerk
San Diego County, California

JUN 1 9 2009

# EXHIBIT B

Recording Requested By:
AURORA LOAN SERVICES

When Recorded Return To:

ASSIGNMENT PREP
AURORA LOAN SERVICES
P.O. Box 1706
Scottsbluff, NE 69363-1706

*flc*

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Orange, California
**SELLER'S SERVICING #:**    "PIZZO"

**MERS #: 100247000510005896 VRU #: 1-888-679-6377**

Prepared By: Darline Dietz, AURORA LOAN SERVICES 2617 COLLEGE PARK, PO BOX 1706, SCOTTSBLUFF, NE
69363-1706 308-635-3500

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR MYLOR
FINANCIAL GROUP, INC., A CALIFORNIA CORPORATION IT'S SUCCESSORS AND ASSIGNS hereby grants,
assigns and tranfers to AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK, SCOTTSBLUFF, NE 69361 all
beneficial interest under that certain Deed of Trust dated 05/25/2005 , in the amount of $850,000.00, executed by
ALBERT PIZZO AND JOAN PIZZO, HUSBAND AND WIFE AS JOINT TENANTS to MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC AS NOMINEE FOR MYLOR FINANCIAL GROUP, INC., A CALIFORNIA
CORPORATION and Recorded: 06/07/2005 as Instrument No.: 2005-0474666 in Orange, California

Together with the note or notes therein described or referred to, in said Deed of Trust, the money due and to
become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

In witness whereof this instrument is executed.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR MYLOR FINANCIAL GROUP,
INC., A CALIFORNIA CORPORATION IT'S SUCCESSORS AND ASSIGNS
On September 16th, 2009

*Lucy Lang*

LUCY A. LANG, Vice-President

*DAD*DADALSI*09/16/2009 02:50:32 PM* ALSI01ALSIA000000000000000597277* CAORANG'      CASTATE_TRUST_ASSIGN_ASSN **DADALSI*

EXHIBIT *B*

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Nebraska
COUNTY OF Scotts Bluff

On September 16th, 2009 before me,  JOANN REIN, Notary Public, personally appeared LUCY A. LANG ,  who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized  capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Nebraska that the foregoing paragraph is true and correct.

WITNESS my hand and official seal,

JOANN REIN
Notary Expires: 12/27/2012

GENERAL NOTARY - State of Nebraska
JOANN REIN
My Comm. Exp. Dec. 27, 2012

(This area for notarial seal)

MIN 100247000510009896
MERS Phone: 1-888-679-6377

# NOTE

LOAN NO.:

MAY 25, 2005
[Date]

ORANGE
[City]

CALIFORNIA
[State]

119 & 119 1/2 28TH STREET, NEWPORT BEACH, CA 92663
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 850,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is

**MYLOR FINANCIAL GROUP, INC., A CALIFORNIA CORPORATION**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on JULY, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JUNE 01, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at MYLOR FINANCIAL GROUP, INC.
15451 SAN FERNANDO MISSION BLVD. #200, MISSION HILLS, CA 91345 or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 5,028.07

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP 5N (0207)

Initials

Form 3200 1/01

Page 1 of 3

LENDER SUPPORT SYSTEMS, INC. 5N NEW (04/03)

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of     15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.000    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

VMP-5N (0207)                        Page 2 of 3                         Form 3200 1/01

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note , protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
ALBERT PIZZO                        -Borrower    JOAN PIZZO                        -Borrower

_____ (Seal)        _____ (Seal)
                                    -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                                    -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                                    -Borrower                                        -Borrower

Pay to the order of
**Lehman Brothers Bank, FSB**

Without recourse

Mylor Financial Group, Inc., a California Corporation

Veronica Deanda, Assistant Secretary

# EXHIBIT C

*Ticci Pizzo*

Recording Requested By:
PMC BANCORP

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

51.00

**2006000667787 12:23pm 10/06/06**

108 73 D11 16

0.00 0.00 0.00 0.00 45.00 0.00 0.00 0.00

And After Recording Return To:
PMC BANCORP
17800 CASTLETON ST., #488
CITY OF INDUSTRY, CALIFORNIA 91748
Loan Number: 8939111000

Recording Request by
Zang Recording Services on
behalf of ATI

————————— [Space Above This Line For Recording Data] —————————

# DEED OF TRUST

**LENDER RESERVES THE RIGHT TO A PRIORITY SECURITY INTEREST IN ALL FUTURE ADVANCES THAT IT MAKES UNDER THIS DEED OF TRUST AND THE HELOC.**

MIN: 1001360-8939111000-2

## DEFINITIONS

(A) "Security Instrument" means this document, which is dated   SEPTEMBER 28, 2006   , together with all Riders to this document.
(B) "Borrower" is   ALBERT PIZZO AND JOAN PIZZO, HUSBAND AND WIFE AS JOINT TENANTS

the party or parties who have signed this Security Instrument.
Borrower is the trustor under this Security Instrument.
(C) "Lender" is   PMC BANCORP

Lender is a   CALIFORNIA CORPORATION                                                organized
and existing under the laws of   CALIFORNIA
Lender's address is   17800 CASTLETON ST., #488, CITY OF INDUSTRY, CALIFORNIA 91748
Lender is the beneficiary under this Security Instrument.
(D) "Agreement" means the Home Equity Line of Credit Agreement signed by the Borrower.
(E) "Account" means the Home Equity Line of Credit Account pursuant to which the Lender makes Advances to the Borrower at the Borrower's direction, allowing the Borrower to repay those Advances and take additional Advances, subject to the terms of the Agreement.
(F) "Credit Limit" means the maximum aggregate amount of principal that may be secured by this Security Instrument at any one time. The Credit Limit is $386,000.00                . Except to the extent prohibited by Applicable Law, the Credit Limit does not apply to interest, Finance Charges, and other fees and charges validly incurred by Borrower under the Agreement and this Security Instrument. The Credit Limit also does not apply to other advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.
(G) "Account Balance" is the total unpaid principal of the Account, plus earned but unpaid Finance Charges, outstanding fees, charges, and costs.

DocMagic *eForms* 800-649-1362
www.docmagic.com

Cahesim.hlc

EXHIBIT   *C*



(H) **"Maturity Date"** is the date on which the entire Account Balance under the Agreement is due. The entire Account Balance on your Account, as defined in the Agreement and this Security Instrument, is due on OCTOBER 1, 2026                    .

(I) **"Property"** means the Property that is described below under the heading "Transfer of Rights in the Property."

(J) **"Secured Debt"** means:

    (1)   All amounts due under your Account, including principal, interest, Finance Charges, and other fees, charges, and costs incurred under the terms of this Security Instrument and all extensions, modifications, substitutions or renewals thereof.

    (2)   Any advances made and expenses incurred by Lender under the terms of this Security Instrument.

(K) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ 1-4 Family | ☐ Condominium Rider | ☐ Escrow Rider |
| ☐ Second Home | ☐ Planned Unit Development Rider | ☐ Mortgage Insurance Rider |
| ☐ Other(s) | | |

(L) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(M) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(N) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(O) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(P) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Agreement and/or this Security Instrument.

(Q) **"Approved Prior Loan"** means a lien which is and which lender acknowledges and agrees will continue to have priority over the lien created by this Security Instrument.

(R) **"Trustee"** is   TICOR TITLE COMPANY OF CALIFORNIA
25950 ACERO STREET SUITE 320, MISSION VIEJO, CALIFORNIA 92691           .

(S) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

       COUNTY               of               ORANGE            :

   [Type of Recording Jurisdiction]                 [Name of Recording Jurisdiction]

Cahesim.hlc

LOT 26 IN BLOCK 28 OF NEWPORT BEACH, IN THE CITY OF NEWPORT
EACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED
IN BOOK 3, PAGE(S) 26, MISCELLANEOUS MAPS, IN THE OFFICE OF THE
COUNTY RECORDER OF SAID COUNTY.
A.P.N.: 047-091-24

which currently has the address of    119 - 119 1/2 28TH STREET
                                                          [Street]

      NEWPORT BEACH            CALIFORNIA              92663       ("Property Address"):
        [City]                    [State]            [Zip Code]

        TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security
Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors
and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose
and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling
this Security Instrument.
        BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right
to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.
        ADVANCES. During the Draw Period described in the Agreement, the Borrower may repeatedly take and
repay any advances that Lender makes to Borrower under the terms of the Agreement and this Security Instrument,
subject to the terms that the Agreement and this Security Instrument impose. The Agreement and this Security
Instrument will remain in full force and effect notwithstanding that the Account Balance under the Agreement may
occasionally be reduced to an amount of equal to or less than zero.
        Any amounts that Lender advances to Borrower in excess of the Credit Limit will be secured by the terms of
this Security Instrument unless applicable law prohibits the same. Lender shall not be obligated to increase the Credit
Limit formally or to make additional Advances in excess of the Credit Limit stated in the Agreement even though the
Credit Limit has been exceeded one or more times. The Draw Period may or may not be followed by a Repayment
Period, as described in the Agreement, during which additional Advances are not available. During both the Draw
Period and the Repayment Period the Lender may, at its option, make Advances from the Account to pay fees,
charges, or credit insurance premiums due under the Agreement or this Security Instrument, or make other Advances
as allowed by this Security Instrument.
        THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:
        1.    **Payment of Secured Debt.** Borrower shall pay when due all Secured Debt in accordance with the
Agreement and this Security Instrument. All payments shall be made in U.S. currency. However, if any check or
other instrument received by Lender as payment under the Agreement or this Security Instrument is returned to Lender
unpaid, Lender may require that any or all subsequent payments due under the Agreement or Security Instrument be
by a method of Lender's choosing. These methods include, but are not limited to: (a) cash; (b) money order; (c)
certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution
whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
        Payments are deemed received by Lender when received at the location designated in the Billing Statement or
at such other location as may be designated by Lender in accordance with the notice provisions provided in Section
15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring
the Account current. Lender may accept any payment or partial payment insufficient to bring the Account current,
without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the
future. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower

---

Cahesim.hlc

from making payments due under the Agreement and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2.    Application of Payments or Proceeds.** All payments accepted by Lender shall be applied to the Secured Debt under this Security Instrument as provided in the Agreement unless Applicable Law provides otherwise. Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Agreement shall not extend or postpone the due date, or change the amount, of the Minimum Payment.

    **3.    Funds for Escrow Items.** Borrower shall not be required to pay into escrow amounts due for taxes, assessments, leasehold payments, or other insurance premiums unless otherwise agreed in a separate writing.

    **4.    Charges; Liens; Prior Security Interests.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in a manner provided in Section 3.

Borrower shall promptly discharge any lien, other than the Approved Prior Loan, which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, other than the Approved Prior Loan, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth in this Section.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with the Agreement. Borrower shall pay when due, or shall cause to be paid when due, all sums required under the loan documents evidencing the Approved Prior Loan and shall perform or cause to be performed all of the covenants and agreements of Borrower or the obligor set forth in such loan documents. All of Lender's rights under this Covenant shall be subject to the rights of the Holder of the Approved Prior Loan.

    **5.    Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Agreement. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section shall become additional Secured Debt of Borrower and secured by this Security Instrument. These amounts shall bear interest at the Agreement rate from, the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment and be subject to the terms of the Agreement and the Security Instrument.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgagee clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgagee clause and shall name Lender as mortgagee and/or as an additional loss

CALIFORNIA HOME EQUITY LINE OF CREDIT DEED OF TRUST - MERS
CAHESIM.HLC  07/07/06                                      Page 4 of 13                            *DocMagic eForms* 800-649-1362
www.docmagic.com

payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Agreement up to the amount of the outstanding Agreement Account Balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the Secured Debt secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Agreement or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Agreement or this Security Instrument, whether or not then due.

6.    **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of the Agreement and Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower resides on the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.    **Borrower's Home Equity Line of Credit Application Process; Default.** Borrower shall be in default if, during the Account application process, or at any time during the term of the Agreement, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Account. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

Borrower is also in default if: 1) Borrower engages in fraud or makes a material misrepresentation at any time in connection with Borrower's Account; 2) Lender does not receive the full amount of any Minimum Payment due or Borrower fails to meet any of the other repayment terms of the Agreement; 3) Borrower's action or inaction adversely affects the Property or Lender's rights in it. Examples of these actions or inactions include, but are not limited to: a) Borrower's's death, if Borrower is the sole person on the Account; or the death of all but one borrower

CALIFORNIA HOME EQUITY LINE OF CREDIT DEED OF TRUST - MERS
CAHESIM.HLC  07/07/06                                      Page 5 of 13                      DocMagic *eForms* 800-649-1362
                                                                                            www.docmagic.com

Cahesim.hlc

which adversely affects Lender's security; b) Illegal use of the Property, if such use subjects the Property to seizure; c) Transfer of all or part of the Borrower's interest in the Property without Lender's written consent; d) All or part of the Property is taken by condemnation or eminent domain; e) Foreclosure of any senior lien on the Property; f) Failure to maintain required insurance on the Property; g) Waste or destructive use of the Property which adversely affects Lender's security; h) Failure to pay taxes or assessments on the Property; i) Permitting the creation of a senior lien on the Property other than an Approved Prior Loan; j) Filing of a judgment against Borrower, if the amount of the judgment and collateral subject to the judgment is such that Lender's security is adversely affected.

Lender may, at its option, take lesser actions than those described at the beginning of this Section. Such lesser actions may include, without limitation, suspending Borrower's Account and not allowing Borrower to obtain any further Advances, reducing Borrower's Credit Limit, and/or changing the payment terms on Borrower's Account. If Lender takes any such actions, this shall not constitute an election of remedies or a waiver of Lender's right to exercise any rights or remedies under the remainder of this Section, the remaining provisions of the Agreement, the Security Instrument, or at law or in equity. Lender may take action under this Section only after complying with any notice or cure provisions required under Applicable Law. In the event Lender elects not to terminate the Account or take any lesser action as provided in this Section, Lender does not forfeit or waive its right to do so at a later time if any of the circumstances described above exists at that time.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any Secured Debt secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender may without notice, perform or cause to be performed any covenant of Borrower in this Security Instrument, and Borrower appoints Lender as attorney in fact to sign Borrower's name. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take this action, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section.

Any amounts disbursed by Lender under this Section shall become additional Secured Debt of Borrower secured by this Security Instrument, payable according to the terms of the Agreement and this Security Instrument. These amounts shall bear interest at the Agreement rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.   **Mortgage Insurance.** Borrower is not required to obtain Mortgage Insurance unless otherwise agreed in writing.

11.   **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the Secured Debt secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in the Agreement and this Security Instrument.

CALIFORNIA HOME EQUITY LINE OF CREDIT DEED OF TRUST - MERS
CAHESIM.HLC  07/07/06                                    Page 6 of 13                        *DocMagic eForms* 800-649-1362
www.docmagic.com

Cahesim.hlc

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the Secured Debt secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Secured Debt secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Secured Debt secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Secured Debt immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Secured Debt immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the Secured Debt secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, and Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Secured Debt secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be otherwise applied in the order provided for in Section 2.

**12.  Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the Secured Debt secured by this Security Instrument granted by Lender to Borrower or any Successors in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Agreement (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the Secured Debt secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Agreement without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender.

**14.  Agreement/Account Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any

Cahesim.hlc

other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Account is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other Account charges collected or to be collected in connection with the Account exceed the permitted limits, then: (a) any such Account charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Agreement). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Agreement conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Agreement which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Agreement and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender or causes Lender to be paid all sums which then would be due under this Security Instrument and the Agreement as if no acceleration had

Cahesim.hlc

occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the Secured Debt secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Change of Servicer; Notice of Grievance.** The Agreement or a partial interest in the Agreement (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Servicer") that collects the amounts due under the Agreement and this Security Instrument and performs other mortgage loan servicing obligations under the Agreement, this Security Instrument, and Applicable Law. There also might be one or more changes of the Servicer unrelated to a sale of the Agreement. If the Agreement is sold and thereafter the Agreement is serviced by a Servicer other than the purchaser of the Agreement, the servicing obligations to Borrower will remain with the Servicer or be transferred to a successor Servicer and are not assumed by the Agreement purchaser unless otherwise provided.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party and allowed the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and reasonable time to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

DocMagic *eFarms* 800-549-1362
www.docmagic.com

Cahesim.hlc

**NON-UNIFORM COVENANTS.**    Borrower and Lender further covenant and agree as follows:

22.    **Acceleration; Remedies.** Lender shall give notice as required by Applicable Law prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument or the Agreement (but not prior to acceleration under Section 18 of the Security Instrument unless Applicable Law provides otherwise), Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any art of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23.    **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Agreements evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24.    **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25.    **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

If a credit card was issued in connection with the Secured Debt, this Deed of Trust and the Property described on Page one are Security for the secured credit card obligation.

26.    **Future Advance.** Lender reserves the right to a priority security interest in all future advances that it makes under this Deed of Trust and the Agreement.

CALIFORNIA HOME EQUITY LINE OF CREDIT DEED OF TRUST - MERS
CAHESIM.HLC  07/07/06                                          Page 10 of 13                          DocMagic *eFormis* 800-649-1362
www.docmagic.com

Cahesim.hlc

**THIS MORTGAGE ASSUMES LENDER IS A SUPERVISED FINANCIAL ORGANIZATION UNDER CALIFORNIA LAW, OR THAT LENDER OTHERWISE RELIED ON THE ALTERNATIVE MORTGAGE PARITY ACT TO MAKE THE TRANSACTION UNDERLYING THIS DEED OF TRUST.**

**BENEFICIARY REQUESTS NOTICE OF ANY ADVERSE ACTION
——————— THAT A PRIORITY LIEN HOLDER TAKES WITH REGARD TO ———————
THE PROPERTY, INCLUDING DEFAULT AND FORECLOSURE**

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action. In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded _____, in Book _____,
Page _____, records of _____ County,
(or filed for record with recorder's serial number _____ ,
County), California, executed by

as trustor (or mortgagor) in which

is named as beneficiary (or mortgagee) and

as trustee be mailed to

at

NOTICE: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

Signature: _____

Cahesim.hlc

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
ALBERT    PIZZO          -Borrower       JOAN    PIZZO          -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                               -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                               -Borrower

Witness:                                Witness:

_____                 _____

————————————————— [Space Below This Line For Acknowledgment] —————————————————

State of California          )
                             ) ss.
County of  ORANGE            )

On *Oct 2nd, 2008* before me, *Diane Derr, Notary Public*

personally appeared   ALBERT   PIZZO,   JOAN   PIZZO

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



DIANE DERR
Commission # 1669725
Notary Public - California
Orange County
My Comm. Expires Jun 21, 2010

————————————————————————————
NOTARY SIGNATURE

*Diane Derr*
————————————————————————————
(Typed Name of Notary)

NOTARY SEAL

Cahesim.hlc

MIN: 1001360-8939111000-2          Loan Number: 8939111000

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 28th day of    SEPTEMBER, 2006        , and
is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security
Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure
repayment of a Home Equity Line of Credit Agreement (the "Agreement") to PMC BANCORP, A
CALIFORNIA CORPORATION

(the "Lender") of the same date and covering the Property described in the Security Instrument and located
at:

119 - 119 1/2 28TH STREET, NEWPORT BEACH, CALIFORNIA 92663
[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender
further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY
INSTRUMENT.** In addition to the Property described in the Security Instrument, the
following items now or hereafter attached to the Property to the extent they are fixtures or
are added to the Property description shall also constitute Property covered by the Security
Instrument: building materials, appliances and goods of every nature whatsoever now or
hereafter located in, on, or used, or intended to be used in connection with the Property,
including, but not limited to, those for the purposes of supplying or distributing heating,
cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus,
security and access control apparatus, plumbing, bath tubs, water heaters, water closets,
sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings,
storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached
mirrors, cabinets, paneling and attached floor coverings, all of which, including
replacements and additions thereto, shall be deemed to be and remain a part of the Property
covered by the Security Instrument. All of the foregoing together with the Property
described in the Security Instrument (or the leasehold estate if the Security Instrument is
on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the
"Property."
**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not
seek, agree to or make a change in the use of the Property or its zoning classification,
unless Lender has agreed in writing to the change. Borrower shall comply with all laws,
ordinances, regulations and requirements of any governmental body applicable to the
Property.
**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower
shall not allow any lien inferior to the Security Instrument to be perfected against the
Property without Lender's prior written permission.

---

Usherd14.hlc

D.  RENT LOSS INSURANCE.  Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by the Security Instrument.

E.  "BORROWER'S RIGHT TO REINSTATE" DELETED.  Section 19 is deleted.

F.  BORROWER'S OCCUPANCY.  Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

G.  ASSIGNMENT OF LEASES.  Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property.  Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion.  As used in this paragraph F, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H.  ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.  Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable.  Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents.  However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent.  This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless Applicable Law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become additional Secured Debt of Borrower to Lender secured by the Security Instrument.

Borrower represents and warrants that, except as Borrower has previously disclosed to Lender, Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

---

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender.

    **I.    CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_____ (Seal)    _____ (Seal)
ALBERT    PIZZO    -Borrower    JOAN    PIZZO    -Borrower


_____ (Seal)    _____ (Seal)
    -Borrower    -Borrower


_____ (Seal)    _____ (Seal)
    -Borrower    -Borrower

Usherd14.hlc